UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:09-CV-139

LANCE WHITE and
ANDREW DEWAYNE LY                                                    PLAINTIFFS

v.

DREW DEGHETTO, Individually and as a
Police Officer for the Hopkinsville Kentucky
Police Department; MARY HOLLAND, Individually
and as a Police Officer for the Hopkinsville Kentucky
Police Department; GUY HOWIE, Individually and
as Chief of Police of Hopkinsville Police Department;
and CITY OF HOPKINSVILLE, KENTUCKY                                   DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court upon Plaintiffs' Motion for Summary Judgment (Docket #13) and Defendants Mary Holland, Guy Howie, and the City of Hopkinsville's [hereinafter "Defendants"][1] Motion for Summary Judgment (Docket #15). Plaintiffs have responded (Docket #20). Defendants have responded and replied (Docket #18, 22). This matter is now ripe for adjudication. For the following reasons, Plaintiffs' motion is DENIED, and Defendants' motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

On the evening of July 31, 2008, Plaintiffs Andrew DeWayne Ly and Lance White were involved in an altercation with the Hopkinsville Police Department which resulted in the filing of the present civil lawsuit against members of the police force and the City of Hopkinsville, Kentucky. At approximately 10:00 p.m., Andrew Ly left his friend's house, where he had been

---

[1]The only remaining Defendant, Drew Deghetto, is not yet before the Court because Plaintiffs have been unable to effect service of process.

drinking alcohol, and began driving a borrowed vehicle across town. On his way, Ly noticed his best friend, Lance White, walking down the street by himself. Ly pulled the vehicle over and White entered the car and sat in the front passenger seat. Ly then drove approximately three blocks before he noticed police lights behind him. This police vehicle was operated by Captain Mary Holland. Although Ly was aware that a police officer was attempting to pull him over, he continued to drive, passing at least one stop sign without stopping. Sergeant Hayes (who is not a party to this action) and Officer Deghetto soon joined the pursuit.

Officer Deghetto passed Captain Holland's vehicle and the vehicle driven by Ly and attempted a rolling roadblock[2] to get Ly to stop his vehicle. Instead, Ly made a u-turn and began heading in the opposite direction. Additional officers joined the pursuit at this time. Officer Deghetto passed Ly's vehicle and again attempted a rolling roadblock. Ly directed White to hold his arms up outside the window in order to indicate that they intended to surrender. Ly and White then heard shots being fired, and Ly testified that he could see one of the police officers firing at his vehicle. Officer Deghetto had fired four or five rounds at the rear tire of the vehicle in an attempt to stop the car, but these shots were ineffective. White pulled his arms back into

---

[2]Chief Guy Howie described a rolling roadblock in his June 23, 2010, deposition as follows:

> Q: All right. Officer Deghetto performed a rolling road block. What is that?
> A: It is a technique that is used by some law enforcement agencies to slow a wanted vehicle down. It can be done with as few as one car all the way up to four or five cars. You can – you can do them with marked or unmarked vehicles. It's just a technique that's used to slow a wanted vehicle down or to bring it to a complete stop.
> Q: Is it somehow where you try to get in front of that vehicle?
> A: To the front, and to the sides, and to the rear, and slow your speed.

Howie Depo. Transcript, DN 13-3, p. 14-15.

the vehicle and told Ly to keep going because he thought the police were going to kill both of them. As several police vehicles continued to pursue Ly and White, Ly turned his vehicle into a parking lot and soon thereafter slid into a ditch. The airbag deployed and the car became inoperable.

Police officers approached the immobile vehicle and ordered Ly and White out of the car. Officers then broke the windows of the car to remove Ly and White, and arrested both of them. Ly was taken to the hospital for a gunpowder residue test. He sustained only minor scrapes and bruises that healed within a couple of days. After he was released from the emergency room, he was taken to the jail to be processed. White was initially transported to the jail. When he complained about a laceration and bruising to his ribcage approximately three hours later, he was taken to the hospital for evaluation. White was then transported back to the jail and released approximately six hours later.

An internal investigation conducted by the police department determined that Officer Deghetto had violated several police policies by conducting two rolling roadblocks without permission, firing at Ly's vehicle when the use of deadly force was unwarranted, and failing to properly activate his mobile video system. Officer Deghetto was suspended without pay for thirty days.[3] Following his suspension, Officer Deghetto resigned from the Hopkinsville Police Department.

---

[3] The parties note that Officer Deghetto had a prior disciplinary record with the police department. In January of 2007, Officer Deghetto received an oral warning for taking breaks without checking in, falsifying activity logs, and having liaisons with a female while on duty. Then in March of 2008 he had received oral counseling for failure to show up at two court appearances. Finally, Officer Deghetto received oral counseling for allowing incidents in his personal life to influence his professional actions in April of 2008.

Plaintiffs filed their Complaint in this Court on July 30, 2009. This matter is set to go to trial on January 24, 2011. Both parties have filed dispositive motions, which the Court now considers.

## STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

Plaintiffs' Complaint contains the following Counts: (I) Constitutional Violations -

Defendants Deghetto and Holland; (II) Constitutional Violations - Defendants Guy Howie and City of Hopkinsville, Kentucky; (III) Intentional Torts - Defendants Deghetto and Holland; (IV) Negligence - Defendant City of Hopkinsville, Kentucky; (V) Violation of Civil Rights Pursuant to 42 U.S.C. § 1983, 1988 - General Allegation; (VI) Violation of Civil Rights Pursuant to Title 42 U.S.C. § 1983 (Failure to Implement Appropriate Policies; Customs and Practices); (VII) Violation of Civil Rights 42 U.S.C. § 1983 (Unreasonable and Excessive Force); (VIII) Punitive Damages - Defendants Howie, Holland and Deghetto; and (IX) Damages. Defendants have interpreted these nine Counts to allege the following:

> (1) Officer Deghetto, Captain Holland and Chief Howie violated Plaintiffs' federal and state constitutional protections against
>
>   (a) the use of excessive force;
>   (b) deliberate indifference to serious medical needs; and
>   (c) deprivation of liberty and property without due process of law.
>
> (2) The City of Hopkinsville and Chief Howie maintained a municipal policy or custom that led to these violations and failed to adequately train related to these violations.
>
> (3) The City of Hopkinsville and Chief Howie bear respondeat superior liability for the acts of Officer Deghetto and Captain Holland.
>
> (4) Officer DeGhetto and Captain Holland committed common law torts of assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress and conspiracy.
>
> (5) Chief Howie bears respondeat superior liability for these common law torts.
>
> (6) The City of Hopkinsville was negligent in allowing these common law torts to be committed upon the Plaintiffs.

Defendants' Mot. for Sum. Judg., DN 15-2, p. 5-6 (citations omitted). Plaintiffs' response memorandum does not object to the classification of their claims in this manner. Further, the

Court believes that Defendants' categorization provides an effective means of analyzing the two pending motions for summary judgment.

As a preliminary matter, Plaintiffs have sued Defendants Deghetto, Howie, and Holland in their individual and official capacities. Plaintiffs have also sued the City of Hopkinsville, Kentucky. "Suing a government employee in his official capacity 'generally represent[s] only another way of pleading an action against an entity of which an officer is an agent.'" *Baar v. Jefferson Cnty. Bd. of Educ.*, 686 F. Supp. 2d 699, 704 (W.D. Ky. 2010) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). In the Western District of Kentucky, the Court will dismiss official capacity claims where the local governmental entity is also a party, as is the case here. *Id.* Accordingly, the official capacity claims against Deghetto, Howie, and Holland are hereby dismissed. The Court now considers Plaintiffs' pending claims.

**I.    42 U.S.C. § 1983**

Plaintiffs allege that Defendants, acting under color of state law, deprived Plaintiffs of their constitutional rights, and can therefore be held liable under 42 U.S.C. § 1983. There is no dispute that Defendants were at all times acting under color of state law. Therefore, the Court's analysis focuses on whether Plaintiffs were deprived of constitutional rights. Plaintiffs have alleged that Defendants used excessive force in violation of the Fourth Amendment, were deliberately indifferent to Plaintiffs' medical needs in violation of the Eighth Amendment, and deprived Plaintiffs of life and liberty without due process of law in violation of the Fourteenth Amendment. Plaintiffs also assert violations of Kentucky's Constitution.

　　A.    *Excessive Force*

In order to state a claim for use of excessive force in violation of the Fourth Amendment,

6

the Court applies the "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396. The Court should carefully balance the suspect's Fourth Amendment rights against the "governmental interests at stake." *Id.* The Court considers "the perspective of a reasonable officer on the scene" in order to determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 396-97.

Plaintiffs argue that Captain Holland used excessive force while attempting to stop Plaintiffs' vehicle, causing Plaintiffs' to wreck their vehicle, breaking the car windows, and dragging Plaintiffs out of the vehicle through the broken windows. In contrast, Defendants assert that there is no evidence that Captain Holland had any physical contact whatsoever with Plaintiffs during either the pursuit or the arrest. In response, Plaintiffs argue that Captain Holland was the officer in charge and "reasonably could have been involved in the Plaintiffs' arrest." Plaintiffs' Response, DN 20, p. 6.

The evidence undisputedly demonstrates that Officer Deghetto was the only officer who attempted a rolling roadblock and shot at the vehicle during the pursuit. In contrast, Captain Holland was the first on the scene and followed Plaintiffs' car throughout the pursuit. Plaintiffs have failed to present any evidence that Captain Holland actually broke the windows of the vehicle or pulled Plaintiffs out of the car.[4] Although Plaintiffs argue that this fact can be

---

[4] Captain Holland's affidavit states that she was not involved in removing either Ly or White from the vehicle, and she did not take either individual into custody. *See* Holland Aff., DN 24, ¶ 7.

7

assumed, mere speculation is insufficient to defeat a motion for summary judgment. As Plaintiffs have failed to present a genuine issue of material fact that Captain Holland used any excessive force in dealing with Plaintiffs on the night of July 31, 2008, summary judgment as to the excessive force claim against Mary Holland is GRANTED in favor of Defendants.

Nor does any evidence of excessive force exist as to Chief Howie. Chief Howie was not involved in the pursuit or arrest. Therefore, he had no personal involvement and cannot be held liable. Accordingly, summary judgment as to the excessive force claim against Guy Howie is GRANTED in favor of Defendants.

B. *Medical Needs*

Next, Plaintiffs argue that Defendants Holland and Howie were deliberately indifferent to the serious medical needs of Plaintiffs. Although similar to an Eighth Amendment claim asserted by prisoners, pretrial detainees' rights to medical treatment fall under the Fourteenth Amendment due process clause. *See Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009) (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005)). The analysis is the same. "Deliberate indifference requires that the defendants 'knew of and disregarded a substantial risk of serious harm to [the plaintiff's] health and safety.'" *Id.* (quoting *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001)). Plaintiffs must demonstrate (1) the existence of a serious medical need, and (2) "'that the defendant possessed a sufficiently culpable state of mind in denying medical care.'" *Id.* (quoting *Estate of Carter*, 408 F.3d at 311).

In this case, there is no evidence of the existence of Plaintiffs' serious medical needs. According to Plaintiffs' depositions, Ly suffered some bruises and scrapes, while White sustained a laceration across his ribcage after being pulled through the car window and a

8

possible head injury from the accident. White sat at the jail for several hours before complaining of his injuries.

Moreover, even if Plaintiffs' injuries were sufficiently serious, there is no evidence that the police officers were deliberately indifferent. Both Plaintiffs were taken to the hospital for treatment of their injuries. Accordingly, summary judgment is GRANTED in favor of Defendants as to Plaintiffs' claims for deliberate indifference of medical needs.

C. *Due Process*

Plaintiffs allege that their due process rights were violated by the police officers' arbitrary government action. The Supreme Court has held that "in the context of a police chase that results in injury, the test is whether the officer's actions 'shock the conscience.'" *Jones v. Byrnes*, 585 F.3d 971, 976 (6th Cir. 2009) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998)). Such actions "are motivated by an 'intent to harm suspects physically or to worsen their legal plight' in a manner unrelated to the legitimate object of arrest." *Id.* (quoting *Lewis*, 523 U.S. at 854). In this case, Plaintiffs have failed to establish that either Captain Holland or Chief Howie engaged in any conduct which would "shock the conscience." Chief Howie was not personally involved in the events leading up to Plaintiffs' injuries. The evidence indicates that Captain Holland merely initiated the traffic stop and pursued Plaintiffs' vehicle after Ly failed to stop. There is no evidence of an intent to harm on the part of Captain Holland, and the evidence shows that her actions were wholly related to the legitimate arrest. Accordingly, as to Plaintiffs' due process claims against Mary Holland and Guy Howie, summary judgment is GRANTED in favor of Defendants.

D. *Kentucky Constitutional Violations*

9

Finally, Plaintiffs argue that they were deprived of their rights under the Kentucky Constitution. It remains unclear which sections of the Kentucky Constitution Defendants allegedly violated. Although Defendants noted this confusion in their motion for summary judgment, Plaintiffs have failed to clarify their position. Further, although Plaintiffs' motion for summary judgment references Article 1, §§ 8 and 16 of the Kentucky Constitution, Plaintiffs present no arguments or facts relating to these sections. For instance, section 8 of the Kentucky Constitution deals with freedom of speech and of the press, which is not an issue in this case. Ky. Const. § 8. Likewise, section 16 addresses the right to bail and habeas corpus, and Plaintiffs have not alleged any facts relating to these issues. Ky. Const. § 16. Accordingly, Plaintiffs' Kentucky Constitution argument must fail because no genuine issue of material fact exists. Summary judgment on these claims is GRANTED in favor of Defendants.

## II. Supervisory Liability, Failure to Train, Respondeat Superior

Next, Plaintiffs argue that the City of Hopkinsville should be held liable for failure to properly train, and that Captain Holland and Chief Howie should be held liable under a respondeat superior or supervisory liability theory. First, any claims of liability under the doctrine of respondeat superior must fail. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").

In addition, Plaintiffs cannot establish that Captain Holland or Chief Howie are liable under a supervisory liability theory. A § 1983 claim "'must fail against a supervisory official unless the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010) (quoting

*Cardinal v. Metrish*, 564 F.3d 794, 802-03 (6th Cir. 2009)). Plaintiffs have failed to present any evidence that Captain Holland encouraged Officer Deghetto's use of excessive force. In fact, Captain Holland reported "shots fired" over the radio and remained completely unaware that the shots had come from Officer Deghetto's weapon until after Plaintiffs were arrested. Moreover, there is no proof that Captain Holland authorized or approved any of the officers' actions after the vehicle crashed into the ditch. Thus, Plaintiffs have failed to create a genuine issue of material fact as to Captain Holland's supervisory liability. Likewise, Chief Howie clearly condemned Officer Deghetto's conduct by disciplining him following the incident. There is no evidence that Chief Howie played any role in the events of that night, or that Chief Howie encouraged the conduct of any of the officers. Therefore, Plaintiffs have also failed to create a genuine issue of material fact as to Chief Howie's supervisory liability.

Plaintiffs also allege that the City is liable for failure to properly train its employees, and should be held liable under § 1983.

> "[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). "Respondeat superior or vicarious liability will not attach under § 1983." *Id.* "Allegations that a particular officer was improperly trained are insufficient to prove liability, as are claims that a particular injury could have been avoided with better training." *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998). Only where a municipality's failure [ ] to train or supervise its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of County Comm'rs v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

*Fultz v. Whittaker*, 261 F. Supp. 2d 767, 780 (W.D. Ky. 2003). In this case, Plaintiffs have

alleged that Officer Deghetto was improperly trained by the City, as evidenced by his actions on the night of July 31, 2008. Plaintiffs also argue that inadequate training is demonstrated by the other officers' conduct in arresting Plaintiffs by breaking the windows of the vehicle and pulling Plaintiffs out through those same windows. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Harris*, 489 U.S. at 390. Instead, the focus should be on the adequacy of the training program, and determining whether "the identified deficiency in a city's training program [is] closely related to the ultimate injury." *Id.* at 391.

Moreover, Plaintiffs may not argue that there should have been "better or more training," because "[s]uch a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program . . . ." *Id.* Plaintiffs have failed to assert a genuine issue of material fact that there was any inadequacy in the City's training program, other than asserting that Officer Deghetto was not properly trained and officers should not have broken the car windows to arrest Plaintiffs. Plaintiffs' evidence fails to connect the officers' actions to the training program endorsed by the City, and Plaintiffs have failed to identify any deficiency in the training program. As the Supreme Court stated in *Harris*, this is not enough to make out a claim for failure to train.

In addition, Plaintiffs have failed to allege deliberate indifference on the part of the City. A claim against the City for failure to train under § 1983 "can only yield liability against a municipality where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *Id.* at 392. The police department had specific policies regarding

rolling roadblocks and the use of deadly force in police pursuits. Officer Deghetto's conduct directly violated these policies. The police department conducted an internal investigation and Officer Deghetto was suspended for 30 days without pay. Deliberate indifference is a stringent standard, *see Fultz*, 261 F. Supp. 2d at 780, and Plaintiffs have failed to create a genuine issue of material fact that such deliberate indifference existed in this case. Accordingly, summary judgment is GRANTED in favor of Defendants as to all remaining § 1983 claims against the City, Captain Holland, and Chief Howie.

### III.     Common Law Tort Claims, Respondeat Superior Liability, and Negligence

Plaintiffs allege that Defendants committed the common law torts of assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, and conspiracy. Plaintiffs also allege that the City can be held liable under a respondeat superior theory[5] and the City was negligent in allowing these torts to be committed. Defendants argue that Captain Holland is entitled to official immunity, or in the alternative, that Plaintiffs have failed to present a genuine issue of material fact that Captain Holland can be held liable for any of the asserted tort theories. Further, Defendants assert that there is no underlying tort to justify respondeat superior liability, and no evidence to demonstrate that the City was negligent.

####     *A.     Captain Holland is Entitled to Qualified Official Immunity*

---

[5]Plaintiffs' Complaint alleges that Chief Howie should be held liable under respondeat superior. The Complaint does not specify if this allegation is against Chief Howie in his individual or official capacity. The Court interprets this allegation as an official capacity claim against Chief Howie, which is treated as a claim against the City. Individual capacity claims against supervisors for respondeat superior are generally dismissed under many statutory schemes encompassing respondeat superior. *See, e.g.*, *Cabinet for Families and Children v. Cummings*, 163 S.W.3d 425, 432-33 (Ky. 2005) (discussing Title VII, the False Claims Act, and various whistleblower statutes).

According to Kentucky law, official immunity is "immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions." *Yanero v. Davis*, 65 S.W.3d 510, 521 (Ky. 2001). "Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, i.e., those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment, (2) in good faith, and (3) within the scope of the employee's authority." *Id.* at 522 (internal citations omitted). As noted by Defendants, the decision to initiate or continue a pursuit of a suspect is discretionary in nature. *See Walker v. Davis*, 643 F. Supp. 2d 921, 932 (W.D. Ky. 2009) (analogizing *Haugh v. City of Louisville*, 242 S.W.3d 683 (Ky. Ct. App. 2007), where the decision to storm into a suspect's house was deemed discretionary). In addition, there is no evidence that Captain Holland was not acting in good faith. Captain Holland's actions were clearly within the scope of her authority, as it is only alleged that she initiated a traffic stop, pursued a fleeing suspect, and placed Plaintiffs under arrest. Accordingly, the Court finds that Captain Holland is entitled to qualified official immunity and summary judgment should be GRANTED in favor of Defendants.

  B.  *Even if Captain Holland is Not Entitled to Qualified Official Immunity, Plaintiffs' Tort Claims Must Fail*

Even if Captain Holland were not entitled to qualified official immunity, the Court finds that Plaintiffs have failed to present sufficient evidence to sustain any of their state law tort claims against her.

First, Plaintiffs' assault and battery claims must fail. "Assault is a tort which merely requires the threat of unwanted touching of the victim, while battery requires an actual unwanted

14

touching." *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. Ct. App. 2001). "[An] officer may use such force as [is] necessary or reasonably appear[s] to him to be necessary to take into custody the person he is seeking to arrest." *City of Lexington v. Gray*, 499 S.W.2d 72, 74 (Ky. 1973).

In this case, Captain Holland initiated a traffic stop by turning on her lights and pulling behind Plaintiffs' vehicle. Plaintiffs then began to flee, and Captain Holland followed in pursuit. There is no genuine issue of material fact that Captain Holland ever physically touched Plaintiffs at any time. Without physical contact, a cause of action for battery clearly will not lie. Moreover, Captain Holland's actions were reasonably necessary to obtain custody of Plaintiffs, who were fleeing the police. There is no evidence that Captain Holland took any actions beyond pursuit of the fleeing Plaintiffs. Accordingly, there is no genuine issue of material fact that Captain Holland committed assault or battery.

Next, Plaintiffs have failed to establish claims for intentional infliction of emotional distress and negligent infliction of emotional distress. A prima facie case of intentional infliction of emotional distress ("IIED"), or outrage, requires that Plaintiff show: (1) that the wrongdoer's conduct was intentional or reckless; (2) that the conduct was outrageous and intolerable and offends against the generally accepted standards of decency and morality; (3) a causal connection between the wrongdoer's conduct and the emotional distress; and (4) that the emotional distress was severe. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2004) (citing *Humana of Ky., Inc. v. Seitz,* 796 S.W.2d 1, 2-3 (Ky. 1990)). The Court must determine "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Id.* at 788-89 (citing Restatement (Second) of Torts § 46(1) cmt. h (1965)).

15

Negligent infliction of emotional distress ("NIED") is similar, but requires physical contact or injury. In Kentucky, Courts have long held that absent a showing of physical injury, a plaintiff cannot assert a claim against a defendant for the negligent infliction of emotional distress. *See, e.g.*, *Capital Holding Corp. v. Bailey*, 873 S.W.2d 187 (Ky. 1994); *Mitchell v. Hadl*, 816 S.W.2d 183, (Ky. 1991). "It is well established in this jurisdiction that 'an action will not lie for fright, shock or mental anguish which is unaccompanied by physical contact or injury . . . .'" *Deutsch v. Shein*, 597 S.W.2d 141, 145-46 (Ky. 1980) (quoting *Morgan v. Hightower's Adm'r*, 163 S.W.2d 21, 22 (Ky. 1942)); *accord Steel Technologies, Inc. v. Congleton*, 234 S.W.3d 920, 928-29 (Ky. 2007). "[T]he amount of physical contact or injury that must be shown is minimal." *Deutsch*, 597 S.W.2d at 146. "However, it is necessary that the damages for mental distress sought to be recovered be related to, and the direct and natural result of, the physical contact or injury sustained." *Id.*

In this case, Plaintiffs have failed to present a genuine issue of material fact that they suffered severe emotional distress. In his deposition, defense counsel asked White about the mental suffering he had endured, to which White responded,

> Every time I see a cop I don't know whether to – I get nervous, palms sweaty. I don't know what they – trigger happy that day or what they're going to do. . . . I see them and, I don't know, they look ornery. They want to jerk you out your window or jerk you out your door and throw you on the ground, rough you up.

White Depo. Transcript, DN 13-5, p. 38. Ly's response to a similar question indicated that he was "in shock" and it was "just a crazy night." Ly Depo. Transcript, DN 13-4, p. 50. He also indicated that he was embarrassed. *Id.* at 54.

The Court finds that Plaintiffs' emotional distress does not rise to the level of "severe emotional distress." While severe emotional distress may include reactions such as shock,

embarrassment, anger, and worry, "[i]t is only where it is extreme that the liability arises." Restatement (Second) of Torts, § 46, comment j. "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Id.* In this case, there is no evidence that Plaintiffs suffered any extreme emotional distress. For instance, Plaintiffs never sought treatment for their distress. No physical bodily harm accompanied their distress. *See* Restatement (Second) of Torts, § 46, comment k ("Normally, severe emotional distress is accompanied or followed by shock, illness, or other bodily harm, which in itself affords evidence that the distress is genuine and severe."). Courts have previously held that mere embarrassment is not enough to establish severe emotional distress. *See, e.g.*, *Miracle v. Bell Cnty. Emergency Med. Servs.*, 237 S.W.3d 555, 560 (Ky. Ct. App. 2007); *Wells v. Huish Detergents, Inc.*, 19 F. App'x 168, 179 (6th Cir. 2001). Accordingly, Plaintiffs have failed to establish severe emotional distress in order for their IIED and NIED claims to survive summary judgment.

Finally, Plaintiffs' conspiracy claim must fail. Kentucky courts have defined civil conspiracy as "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means." *Smith v. Bd. of Educ. of Ludlow*, 94 S.W.2d 321, 325 (Ky. 1936). "[C]ivil conspiracy is not a free-standing claim; rather, it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort." *Stonestreet Farm, LLC v. Buckram Oak Holdings, N.V.*, Nos. 2008-CA-002389-MR, 2009-CA-000026-MR, 2010 WL 2696278, at *13 (Ky. Ct. App. July 9, 2010) (citing *Davenport's Adm'x v. Crummies Creek Coal Co.*, 184 S.W.2d 887, 888 (1945)). This claim must fail because there is no evidence of any agreement between Captain Holland and

17

any tortfeasor. In fact, the evidence demonstrates that Captain Holland was unaware of Officer Deghetto's allegedly tortious conduct (shooting at the tires) at the time it was occurring. As already noted by the Court, Captain Holland did not commit any torts during her pursuit of Plaintiffs. For all of these reasons, Plaintiffs have failed to meet their burden on this claim.

    C.    *Respondeat Superior*

Plaintiffs argue that the City may be held liable under a respondeat superior theory. "The doctrine of respondeat superior applies to the liability of a municipality the same as it does to any other corporation or individual, and it must therefore appear that the agent was acting within the scope of his authority at the time the act complained of occurred." *Ellis v. Jordan*, 571 S.W.2d 635, 638 (Ky. Ct. App. 1978). A municipality may be held liable for an intentional tort committed by one of its employees if the purpose of the intentional tort was to further the municipality's interests. *See Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 732 (Ky. 2009) (citing *Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky. 2005)). Thus, the focus is on the employee's motive. *See id.*

In this case, the Court has already determined that no tort liability attaches to Captain Holland's actions. Therefore, the City cannot be held liable under respondeat superior for Captain Holland's conduct. The Court must still examine, however, the conduct of Officer Deghetto to determine respondeat superior liability. The Court briefly considers whether Plaintiffs have properly asserted common law tort claims against Officer Deghetto.

The Court can easily determine that Plaintiffs' IIED and NIED claims are insufficient as to Officer Deghetto because, as discussed *supra*, Plaintiffs failed to establish severe emotional distress. Therefore, respondeat superior liability can only attach if Officer Deghetto committed

one of the remaining underlying torts: assault, battery, or civil conspiracy.

Officer Deghetto's conduct during the pursuit and arrest of Plaintiffs varied greatly from Captain Holland's actions. Officer Deghetto attempted two rolling roadblocks and fired at Plaintiffs' vehicle four or five times in an attempt to stop the car. There is also some evidence that Officer Deghetto approached Plaintiffs' vehicle with his weapon drawn after the vehicle crashed into the ditch, although it is unclear if Officer Deghetto was one of the officers who broke the windows of the vehicle or dragged Plaintiffs through those windows. At this point in time, there is a genuine issue of material fact as to whether Officer Deghetto used a greater amount of force than was reasonably necessary under the circumstances. This is a question for the jury. *See, e.g.*, *Lawson v. Burnett*, 471 S.W.2d 726, 729 (Ky. 1971). If the jury finds that Officer Deghetto's actions were unreasonable, and that Officer Deghetto was acting within the scope of his employment and in furtherance of the City's interests, the City may be held liable under a respondeat superior theory. Accordingly, the Court DENIES summary judgment on the issue of respondeat superior at this time.

> D.      *Negligence on the Part of the City*

Finally, Plaintiffs allege that the City should be held liable for its negligence in failing to prevent the assault and battery of Plaintiffs. This is essentially a "negligent supervision" claim.

> Kentucky law recognizes that an employer can be held liable for the negligent supervision of its employees. *See Smith v. Isaacs*, 777 S.W.2d 912 (Ky. 1989). In recognizing the tort of negligent supervision, Kentucky has adopted the Restatement (Second) of Agency § 213 which illustrates the requirements for establishing a claim of negligent supervision. *Id.* at 914. As the commentary and illustrations following the Restatement clarify, an employer may be held liable for negligent supervision only if he or she knew or had reason to know of the risk that the employment created. *See* Restatement (Second) of Agency § 213 (1958) (Comment & Illustrations).

19

*Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003). Assuming for purposes of this analysis that an officer did commit a tort in this case, there is no evidence that the City knew or should have known of the risk that an assault and battery would occur. The Court has already discussed the lack of evidence as to any deficient training. In addition, none of Officer Deghetto's prior disciplinary reports contained similar incidents or indicated a risk of the use of excessive force. Plaintiffs have failed to create a genuine issue of material fact that the City knew or should have known of the risk. Accordingly, there is no liability and summary judgment is GRANTED in favor of Defendants on this claim.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is DENIED, and Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

An appropriate order shall issue.